IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MEGAN TAUTGES,

    Plaintiff,

v.                                                           Case No.: 2:22-cv-772

GREENDALE FIRE DEPARTMENT;
TIMOTHY EDWARD SAIDLER; and
KENTEN KAIS,

    Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(B)(6

Defendants Greendale Fire Department ("GFD"), Timothy Edward Saidler ("Saidler"), and Kenten Kais ("Kais"), by their undersigned attorneys, respectfully submit this Brief in Support of their Motion to Dismiss.

Plaintiff Megan Tautges ("Tautges") improperly filed the present lawsuit against the Greendale Fire Department, former Village of Greendale Fire Chief Saidler, and current Village of Greendale Chief Kais. The Greendale Fire Department is not a suable entity, and Tautges does not plead sufficient allegations to surpass the initial threshold questions for any of her claims. As such, Defendants respectfully request that this Court dismiss Plaintiff's Complaint against them.

## FACTUAL BACKGROUND

The following allegations in Tautges' Complaint are relevant to this Motion.[1] Tautges was hired by GFD in September 2017. (Dkt. 1, ¶ 10) Tautges worked at the Village of Greendale as

---

[1] The facts in Tautges Complaint are treated as true <u>only</u> for purposes of this Motion. Defendants reserve the right to contest these facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 55 (2007) (determinations of the sufficiency of claim must be made "on the assumption that all allegations in the complaint are true (even if doubtful in fact)."

a firefighter until she quit on June 2, 2021. (Dkt. 1, ¶ 90) Tautges alleges that during her employment with GFD she made numerous complaints to GFD supervisors about harassment, retaliation, and deprivation of her Constitutional rights, yet none of her complaints were rectified. (Dkt. 1, ¶ 103)

The following is a summary of the facts alleged in Tautges' complaint:

1. A coworker on her shift made inappropriate sexual references and behaviors while on duty, although she does not allege they were directed at her. (Dkt. 1, ¶¶ 17-22)

2. Tautges was sent home for a medical exam under falsified conditions, and under the false perception of her supervisor that she could not do her job. (Dkt. 1, ¶ 23)

3. Tautges was required to obtain a medical re-clearance to return to work, again under false statements regarding her fitness for duty, and no other firefighter was treated the same. (Dkt. 1, ¶¶ 24-25)

4. Tautges alleges that she was told by supervisor Kyle Kierzek that she better not get pregnant during her probationary period if she wanted to keep her job, she complained about the statement to Saidler, and feared retaliation, and Saidler took no actions to process or address her complaint. (Dkt. 1, ¶¶ 29-31)

5. A few days after she made the complaint, Kierzek told her that she could only wear workout attire made of 100% cotton, but he did not put this requirement on male officers. Tautges alleges that male officers were allowed to wear non-cotton workout attire. When she asked Kierzek why she was singled out, he told her not to worry about it. (Dkt. 1, ¶ 32)

6. On September 4, 2018, Tautges allegedly made another complaint about Kierzek's discriminatory and retaliatory behavior to Kozelek, but he did not investigate or resolve the issue.

2

Tautges alleges that after her discrimination complaint, Kierzek treated her poorly, and caused her to fear for her safety and job security. (Dkt. 1, ¶¶ 33-34)

7. On October 9, 2018, she received two "Counseling and Instruction Reports" for skills that she had mastered. She asked for an opportunity to demonstrate that she was proficient in the skills identified in the reports, and successfully demonstrated the skills. She requested that the reports be removed from her file or at least amended to reflect her skills, but GFD refused to remove or amend the reports. (Dkt. 1, ¶¶ 35-38)

8. Tautges alleges that GFD treated male firefighter Josh Hauser significantly more favorably, and that Hauser was not required to complete remedial training despite receiving Counseling and Instruction Reports. (Dkt. 1, ¶ 39)

9. On October 10, 2018, Tautges met with union president, James Hintz, to discuss the discipline against her. Tautges alleges that Hintz agreed to meet with Saidler to discuss her concerns and that they met on October 11, 2018. At the meeting she told Saidler about the discriminatory treatment she received and that her complaints were disregarded. Hintz told Saidler that the discipline Tautges received was wrongful, and Saidler agreed to lead a meeting with her, Hintz, and the firefighters accused of discrimination to resolve the situation. (Dkt. 1, ¶¶ 40-44)

10. Saidler instead held a private meeting with the individuals she accused of discrimination without her or Hintz. Tautges alleges that Saidler asked that the individuals create and back-date documentation for issues which allegedly occurred in 2017 to allow him to fire her. (Dkt. 1, ¶ 45)

11. On October 27, 2018, Tautges asked Saidler when he would be leading the meeting as agreed on October 11, 2018. Saidler told Tautges that he was working on correcting the reports against her and clarifying the training requirements instead of holding a meeting. Tautges alleges

3

that Saidler later advised that the training requirements would not be clarified and that her disciplinary reports would remain as written. Tautges advised that she would be filing a formal discrimination complaint. (Dkt. 1, ¶¶ 47-49)

12. Kierzek and Schmitt did not allow her to watch television with the other firefighters, but they allowed Hauser to watch television on his shift. Tautges told Saidler that the disparate treatment was discriminatory, and that she wanted to file a formal complaint. Saidler emailed Tautges, "Not knowing exactly what ur rebuttal all entails and expectations from it I hope it doesn't backfire. Sometimes it's best to be handled by my office." (Dkt. 1, ¶¶ 50-52)

13. In December 2018, her probationary period was extended. Tautges alleges that she was told numerous times by Saidler, Hintz, Kierzek, and Schmitt that if she could not fit in then she did not belong. Tautges alleges that later in December, GFD instituted formal performance requirements for probationary firefighters, which reflected significantly lower performance standards than she demonstrated on October 9, 2018. (Dkt. 1, ¶¶ 54-55)

14. Tautges requested that complaints be mediated by a third party in accordance with GFD's work rules. The Village of Greendale selected the mediator, who told her that women are not cut out for the fire service. The mediator stated that when he worked a firefighter, women who could not handle the "culture" were forced to quit. The mediator disregarded her complaints and only discussed the Counseling and Instruction reports. Tautges later found a note from Saidler in her personnel file, which stated that the only purpose of the mediation was to discuss complaints about her. Because Saidler repeatedly ignored GFD and Village of Greendale policies that required him to investigate her claims and on March 11, 2019, she submitted her complaint to the EEOC. (Dkt. 1, ¶¶ 56-60)

15. On March 12, 2019, Tautges received a negative performance evaluation from Kozelek, where she was penalized because "she does not feel comfortable with members of other shifts." Kozelek wrote the performance evaluation after Tautges informed him about her discrimination, harassment, and retaliation complaints. (Dkt. 1, ¶ 61)

16. In April 2019, Tautges' probationary period ended. On April 30, 2019, Village Manager Todd Michaels asked to meet with her to discuss her experiences as a woman working for GFD. Tautges spoke with Michaels as an ordinary citizen when discussing her concerns about GFD's treatment of women. Michaels told her that the Village of Greendale greatly values diversity and had just sworn in a "black cop" the day before. Michaels stated he would follow-up regarding the issues she was facing but never did. (Dkt. 1, ¶¶ 62-67)

17. On July 10, 2019, her EEOC Charge of Discrimination was submitted to GFD and Saidler. Eight days later, Tautges met with Saidler regarding her complaint, and following the meeting, Saidler confirmed that GFD would work to rectify the matter set forth in her EEOC Charge of Discrimination. Saidler later summarily dismissed the complaint. (Dkt. 1, ¶¶ 68-69)

18. On September 24, 2019, Tautges, GFD, and Saidler participated in mediation, without resolution. Tautges made multiple complaints to Saidler regarding discrimination and retaliation, occurring after September 24, 2019, which Saidler ignored. On October 22, 2019, she received a write-up that was caused by another firefighter's refusal to communicate with her, Tautges contested the write-up, and GFD failed to investigate or remedy her complaint in violation of GFD policies. (Dkt. 1, ¶¶ 71-73)

19. In January 2020, Saidler retired, and Kais was hired as the new Fire Chief. Tautges alleges that on January 10, 2020, she complained that she was being discriminated against because of her sex due to GFD's disparate application of job performance standards. (Dkt. 1, ¶¶ 74-75)

20. On February 6, 2020, Tautges made an oral complaint about sexually harassing statements made in the workplace. On June 17, 2020, when GFD failed to investigate or provide a remedy in response to her January 10 and February 6, 2020 complaints, she reduced her complaints to writing, but GFD failed to investigate or provide a remedy in response to her complaints. (Dkt. 1, ¶¶ 76-77)

21. In a September 10, 2020 email to City Administrator Michaels, Kais acknowledged "[t]here may be some issues" in response to Tautges' complaints, and he publicly accused Tautges of insubordination. Despite acknowledging the veracity of her complaints, no actions were taken to resolve her complaints. (Dkt. 1, ¶¶ 79-80)

22. Since her original complaint against Kimber in 2018, she was subjected to numerous wrongful disciplinary actions, none of which were resolved in accordance with GFD policy, Village of Greendale policy, or Wis. Stat. § 62.13(5). (Dkt. 1, ¶ 83)

23. On June 2, 2021, Tautges met with Kais and asked to be allowed to exercise her First Amendment rights outside the scope of her ordinary duties regarding important matters of public concern, relating to the inefficient and ineffective manner of GFD's operations, breaches of public trust, the lack of integrity and incompetence of GFD's officials, poor management culture, the lack of an independent HR department, the failure to follow policy to investigate discrimination complaints, the failure to remedy discrimination complaints, the conflicts with the officers, officers' mistrust of administrators, retaliatory restrictions, dishonesty of administrators, and phony and retaliatory discipline. (Dkt. 1, ¶ 84)

24. On June 2, 2021, Kais and an HR representative informed her that GFD would be the sole decisionmaker as to whether her complaints would be investigated or remedied. Tautges alleges that she again renewed her requests for investigations into her prior complaints, but GFD

6

Case 2:22-cv-00772-LA    Filed 08/05/22    Page 6 of 20    Document 7

refused. Tautges also alleges that she requested that she not be assigned to work alone with individuals against whom she had a pending complaint until after the investigation was complete, but GFD again refused. GFD policy calls for a full investigation into such complaints. (Dkt. 1, ¶¶ 85-88)

25. Tautges quit on June 2, 2021, due to intolerable work conditions created by GFD, its refusal to investigate or remedy her complaints, ongoing harassment and retaliation, and deprivation of her Constitutional rights for a four-year period. (Dkt. 1, ¶ 90)

## ARGUMENT

### I. STANDARD OF REVIEW.

To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *quoting Iqbal*, 129 S.Ct. at 1951. In other words, the Supreme Court explained that any legal conclusions must be supported by factual allegations in the complaint.

Therefore, to survive a motion to dismiss, a plaintiff must plead in the Complaint "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1951; *citing Twombly*, 550 U.S. at 556. A court should essentially parse out the conclusory allegations and "determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *McCauley*, 671 F.3d at 616. "The degree

7

of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.*; *quoting Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson*, 614 F.3d at 405. If allegations of a complaint give rise to an "obvious alternative [legitimate] explanation" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Iqbal*, 556 U.S. at 678; *quoting Twombly*, 550 U.S. at 557.

Here, Plaintiff's Complaint fails to advance a claim upon which relief can be granted as to the named Defendants. Accordingly, this Court should grant Defendants' Motion to Dismiss, and dismiss them from this suit with prejudice.

### II.     The Greendale Fire Department Is Not A Suable Entity.

Tautges sues the Greendale Fire Department as a Defendant. Tautges cannot sue the Greendale Fire Department under § 1983 for civil rights violations.

Section 1983 allows a plaintiff to sue a "person" who, acting under color of law, violates his constitutional rights. *Holifield v. Kulwich*, No. 18-CV-801-PP, 2019 WL 288127, at *4 (E.D. Wis. Jan. 22, 2019); *Powell v. Cook Cty. Jail*, 814 F.Supp. 757, 758 (N.D. Ill. 1993); 42 U.S.C. § 1983. The Greendale Fire Department is not a person, and therefore, not an individual subject to suit under § 1983.

Furthermore, a defendant in a federal lawsuit must have the legal capacity to be sued, and state law determines whether an entity has that capacity. In Wisconsin and in this Court, it has long been made clear that municipal departments are not suable entities separate from the municipality. *Vitrano v. Milwaukee Police Dep't*, 2011 WI App, 27, ¶ 8, 331 Wis. 2d 731, 795

N.W.2d 493; *see Grow v. City of Milwaukee*, 84 F. Supp. 2d 990, 995-996 (E.D. Wis. 2000)(holding that a police department is not a suable entity separate from the municipality); *Holifield v. Kulwich*, 18-CV-801-PP, 2019 WL 288127, at *4 (E.D. Wis. Jan. 22, 2019)(ruling that a police department cannot be sued under § 1983 for civil rights violations); *see also Gomez v. City of Chicago*, No. 16 C 7743, 2017 WL 131565, at *3 (N.D. ILL. Jan. 13, 2017)(holding that City of Chicago is correct that the Fire Department is not properly named as a defendant). Thus, because the Greendale Fire Department is not a suable entity, it must be dismissed with prejudice.

### III. TAUTGES' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW.

Tautges alleges a substantive property interest in her employment conferred by the law of the state. (Dkt. 1, ¶ 93) She does not assert a procedural due process claim. Specifically, Tautges alleges that she had a statutory right to be disciplined only for just cause pursuant to Wis. Stat. § 62.13(5), and a right to continued employment absent just cause pursuant to Wis. Stat. § 62.13(5m). (Dkt. 1, ¶¶ 94-96) Her substantive due process claim fails as a matter of law.

Substantive due process rights claims are limited to violations of fundamental rights. Employment-related rights are not fundamental. *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Both the Seventh Circuit and Supreme Court have "emphasized how limited the scope of the substantive due process doctrine is." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). It does not provide blanket protections, and only protects against arbitrary government action that "shocks the conscience," *Tun v. Whittcker*, 398 F.3d 899, 902 (7th Cir. 2005), <u>and</u> implicates fundamental rights. *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). An alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate. *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010).

Here, Tautges' claims must be dismissed, because she cannot show that the Defendants actions shock the conscience, nor has she alleged that she was wrongfully terminated or that any state remedies were inadequate.

### A. Tautges' Substantive Due Process Claim Fails Because the Defendants' Alleged Conduct Does not Shock the Conscience.

The Court should dismiss Tautges' substantive due process claim because the conduct alleged in the Complaint is not the type of brutal or inhumane conduct the Constitution forecloses. The substantive due process threshold is high and misconduct by municipal officials "rise[s] to the level of a constitutional violation only if it shocks the conscience." *Palka* at 453. The Supreme Court has further ruled that "only the most egregious official conduct" may be condemned as shocking the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1988)). That is, the conduct must be so brutal and offensive that it does not "comport with traditional ideas of fair play and decency." *Id.* at 847(*quoting Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).

Here, none of Tautges' allegations against the former and current Greendale Fire Chief meet the conscience-shocking threshold standard. Tautges broadly alleges that "[t]he intentional actions of GFD, Saidler, and Kais resulted in wrongful discipline against Tautges and the termination of [her] employment with GFD, without notice and an opportunity to be heard." (Dkt. 1, ¶ 98) However, the Complaint does not allege which actions were intentional. Furthermore, allegations of intentional conduct are not enough. *See e.g., Lillard v. Shelby Cty. Bd. Of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996). The Seventh Circuit has repeatedly rejected substantive due process claims involving intentional conduct because the conduct must be more than intentional, it must be "literally shocking to the conscience." *See Christensen v. Cty. of Boone*, 483 F.3d 454, 464 (7th Cir. 2007) (stalking did not shock the conscience.); *Geinosky v. City of Chicago*, 675 F.3d 743, 750-51 (explaining that, although issuing 24 parking tickets constituted deliberate and

unjustified official harassment, conduct did not violate substantive due process); *Palka v. Shelton*, 623 F.3d 447, 453-54 (7th Cir. 2010) (concluding that police investigatory tactics did not shock the conscience merely because they did not conform to internal department procedures); *Viehweg v. City of Mount Olive*, 559 F. App'x 550, 552-53 (7th Cir. 2014) (officials who barked demands and warnings, pounded on plaintiff's door, shone a headlight through his window, and told him not to attend a council meeting did not shock the conscience); *Rihm v. Hancock Cty. Pub. Library*, 954 F. Supp. 2d 840, 854 (S.D. Ind. 2013) (verbal attacks and employment discrimination allegedly motivated by racial animus did not shock the conscience).

Similarly, neither does Tautges' blanket allegation that her federal due process rights were violated with malice or with reckless indifference suffice. (Dkt. 1, ¶ 106) Malice and reckless indifference is not the standard. The conduct, as argued above, must be conscience shocking and there is nothing in her allegations that remotely meets this standard.

### B. Tautges Has No Constitutional Right to State-Mandated Procedures.

Tautges alleges that she had a statutory right to be disciplined only for just cause pursuant to Wis. Stat. § 62.13(5), and a right to continued employment absent just cause pursuant to Wis. Stat. § 62.13(5m). (Dkt. 1, ¶¶ 94-96) However, the cited statutes only apply in situations involving suspension or dismissal. (See Wis.Stat. § 62.13(5) ("[a] subordinate may be suspended for just cause . . . by the chief or the board as a penalty."); Wis. Stat. § 62.13(5m) ("Dismissals and reemployment")).

In addition to the inapplicability of the state law procedures, the Supreme Court holds that federal courts lack the authority to direct state officials to comply with state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984); *Snowdon v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal Constitution."). In other

11

words, a failure to follow an internal procedure or a state regulation does not constitute a constitutional violation. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (violation of department procedure or state law is immaterial to whether actions violated federal constitutional right); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 provides a remedy for constitutional violations, not violations of state statutes or regulations); *Archie v. City of Racine*, 847 F.2d 1211, 1216-17 (7th Cir. 1988) (a violation of state law does not give rise to a Section 1983 claim unless it independently violates the Constitution or federal law). Tautges' allegations that Defendants failed to follow internal procedures or state law do not independently violate the Constitution. Thus, Tautges' Section 1983 due process claim must be dismissed.

### C. Defendants Did Not Deny Due Process by Accepting Tautges' Voluntary Resignation.

Defendants afforded Tautges all process due to her in relation to the resignation of her employment. Tautges voluntarily resigned her employment, thereby waiving any rights she had to further process. *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) ("A public employee who voluntarily resigns cannot complain about a lack of due process"); *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982). Tautges had adequate notice and an opportunity to be heard—an opportunity that she chose to forego. Procedural due process claims are reviewed under a two-step analysis - first determining if the plaintiff was deprived of a protected interest and, if yes, next determining what process was due. *Leavell v. Illinois Dept. of Nat'l Resources*, 600 F.3d 798, 804 (7th Cir. 2010).

Tautges has not alleged, nor does Tautges have any basis upon which to allege, that Defendants terminated or had the authority to terminate her employment with the GFD. Tautges' termination was her own decision. (Dkt. 1, ¶ 90)

The normal procedure for dismissing a Wisconsin firefighter is set out in Wis.Stat. § 62.13(5). The fire chief may file written "charges" against a subordinate with the local board of police and fire commissioners, § 62.13(5)(b), and pending disposition of the charges, the chief may suspend the subordinate with pay, § 62.13(5)(b) and (h). After the chief files charges and notifies the person charged, the board holds a hearing within thirty days. The hearing is public, and the person charged has the right to counsel and the power to compel witnesses to attend. § 62.13(5)(d). If the board finds that the charges are sustained, it may take disciplinary action, including dismissal, § 62.13(5)(e), and its actions are subject to expedited judicial review, § 62.13(5)(i). Tautges has not alleged Defendants ever filed charges against her with the board, nor that the board held any hearing regarding the termination of Tautges' employment.

### IV. TAUTGES' DENIAL OF OCCUPATIONAL LIBERTY CLAIM FAILS.

Tautges' denial of occupational liberty claim appears to rest on her allegations that GFD, Saidler, and Kais made public statements about her fitness, and that those statements were spread by members of the GFD to the public and made to public officials, which ensured their availability as public records. (Dkt. 1, ¶¶ 111-112)

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. U.S. Const. XIV; *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The concept of liberty protected by the Due Process Clause includes one's occupational liberty, or "the liberty to follow a trade, profession, or other calling." *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir.1992). The government violates an employee's occupational liberty interest when, in the course of a discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn "the individual's

13

good name, reputation, honor, or integrity" or impose a "stigma or other disability on the individual which forecloses other opportunities." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

### 1. Tautges Does not Allege Any of the Statements Reached Future Employers.

An occupational liberty claim requires an allegation that the statements reached future employers. *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Indeed, *Lashbrook v. Oerkfitz* held that an occupation liberty claim requires "that the circumstances made it virtually impossible for [the plaintiff] to find a new position in his chosen profession." 65 F.3d 1339, 1349 (7th Cir. 1995), *citing Ratliff v. City of* Milwaukee, 795 F.2d 612, 625 (7th Cir. 1986).

Here, the Complaint does not allege that Defendants' statements reached any future employer. Instead, Tautges asserts that the Defendants made public statements that reached other members of GFD and they spread those statements to the public and to public officials. (Dkt. 1, ¶¶ 111-112) Thus, her denial of occupational liberty claim fails because no statement reached a future employer.

### 2. Tautges Cannot State a Cause of Action for a Deprivation of Her Occupational Liberty by Alleging mere Defamation.

"Mere defamation by the government does not deprive a person of liberty protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002) (internal quotations and citations omitted). Rather, it is only the "alteration of legal status," such as governmental deprivation of a right previously held, "which, combined with the injury resulting from the defamation, justif[ies] the invocation of procedural safeguards." *Paul v. Davis*, 424 U.S. 693, 708-09, (1976); *Toxunsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). Thus, when a state actor casts doubt on an individual's "good name, reputation, honor or integrity" in such a manner that it becomes "virtually impossible

14

for the [individual] to find new employment in his chosen field," the government has infringed upon that individual's "liberty interest to pursue the occupation of his choice." *Townsend*, 256 F.3d at 670.

In *Hinkle v. White*, 793 F.3d 764, 768 (7th Cir. 2015), the Seventh Circuit held that the plaintiff (a sheriff) did not meet this standard when the defendants (state police officers) spread falsehoods about him sexually assaulting his stepdaughter and committing arson that "permeated the public sphere." *Id.* at 765–66. The plaintiff in *Hinkle* alleged that this defamatory information caused police departments not to hire him when he applied for positions. *Id.* at 767. The Seventh Circuit—even while recognizing the horribly defamatory nature of the officers' conduct—upheld the dismissal of Hinkle's claim because "[e]ven if that defamation seriously impaired his future employment prospects, the state did not alter his legal status." *Id.* at 768. Even though "Hinkle showed a serious stigma, without the 'plus,' he cannot maintain a due process claim for the denial of a liberty interest.'" *Id.*

In this case, as in *Hinkle*, there is no "plus" to go along with the alleged stigma of comments on "Tautges' fitness.'" While the Complaint alleges generally that Tautges suffered "a tangible loss of other employment opportunities" (Dkt. 1, ¶114) the Complaint does not allege any facts to support the allegation. Thus, Tautges has not sufficiently alleged a due process violation; however, even if potential employers might have been less likely to hire Tautges, nothing that the Defendants are alleged to have done "distinctly alter[ed]' or extinguish[ed]" a right or status previously recognized by state law." *Id.* at 770.

### V. TAUTGES' FIRST AMENDMENT RETALIAITON CLAIM FAILS AS A MATTER OF LAW.

Tautges alleges that Defendants retaliated against her in violation of the First Amendment because she reported that Defendants were engaged in discriminatory conduct. (Dkt. 1, ¶¶ 117-

15

118) To establish a prima facie First Amendment retaliation claim, Plaintiff must allege facts to support three elements: (1) she engaged in protected First Amendment activity; (2) Defendants subjected her to an adverse employment action that was likely to deter the exercise of free speech; and (3) her speech was at least a motivating factor in Defendants' action. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021), cert. denied, No. 20-1576, 2021 WL 2301999 (U.S. June 7, 2021); *see also Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Tautges First Amendment retaliation claim fails to survive the threshold First Amendment standard and must be dismissed.

### A. Tautges Did Not Engage In Constitutionally-Protected Speech.

Tautges' retaliation claim fails at the "threshold determination" as to whether her speech was constitutionally protected. *McArdle v. Peoria School District No. 150*, 705 F.3d 751, 754 (7th Cir. 2013). The question of whether speech is constitutionally protected is a question of law, not of fact. *Kubiak v. City of Chicago*, 810 F.3d 476, 482 (7th Cir. 2016).

### 1. Tautges was speaking pursuant to her official duties, not as a private citizen.

The question of whether there was protected speech depends on two factors: (1) whether the employee was speaking as a private citizen; and (2) whether the employee was speaking on a manner of public concern. *See Garcetti v. Ceballos*, 545 U.S. 410, 417 (2006). While the First Amendment provides protection for citizens speaking on issues of public concern, the Supreme Court has consistently ruled that the government has a "countervailing interest in controlling the operation of its workplaces." *Lane v. Franks*, 573 U.S. 228, 236; *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563, 568 (1968). The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti* at 421; *see also Kubiak v. City of* Chicago,

810 F.3d 476, 481 (7th Cir. 2016). Whether the speech was protected is a question of law. *See McArdle v. Peria Sch. Dist. No.* 150, 705 F.3d 751, 754 (7th Cir. 2013).

A public employee's speech reporting alleged misconduct of fellow employees or supervisors, even if on issues arguably of public concern, is within the ordinary expectations and duties of the public employee and speech that is not entitled to First Amendment protection. *Ulrey v. Reichart*, 941 F.3d 255, 259 (7th Cir. 2019). Indeed, "[s]ince the Supreme Court decided *Garcetti*, [the Seventh Circuit has] repeatedly rejected such claims for a whistleblower carve-out from the category of unprotected employee speech." *Id.*; *see also Kubiak*, 810 F.3d at 481 (police officer reporting misconduct of coworker); *Spiegla v. Hull*, 481 F.3d 961, 966 (prison guard speaking as employee not citizen when reporting to supervisor regarding compliance with prison security policy); *Mills v. City of Evansville*, 452 F.3d 646. 648 (7th Cir. 2006)(on-duty sergeant criticized her superior's plan to reduce the number of officers under her supervision).

Here, Tautges alleges that on April 30, 2019, Village Manager Todd Michaels asked to meet with her one-on-one to discuss her experiences as a woman working for GFD. (Dkt. 1, ¶ 63) Tautges alleges that this meeting was not part of her regular job duties, and that she spoke as an ordinary citizen when expressing her concerns about GFD's treatment of women. (Dkt. 1, ¶ 64) Tautges also alleges that on June 2, 2021, she met with Defendant Kais and requested that she be allowed to exercise her rights under the First Amendments of the U.S. Constitution, outside the scope of her ordinary duties regarding "important matters of public concern, relating to the inefficient and ineffective manner of GFD operations, breaches of public trust, the lack of integrity and incompetence of GFD's officials, poor management culture, the lack of an independent HR department, the failure to follow policy to investigate discrimination complaints, the failure to remedy discrimination complaints, the conflicts with the officers, officers' mistrust of

17

administrators, retaliatory restrictions, dishonesty of administrators, and the suppression of First Amendment rights through phony and retaliatory discipline." (Dkt. 1, ¶ 84)

Tautges' vague allegations that she spoke or requested to speak with supervisors as a private citizen on matters of public concern is not sufficient to establish a First Amendment retaliatory claim. Tautges' duties as a firefighter included both formal job requirements and "the employer's real rules and expectations." *Fairley v. Andrews*, 578 F.3d 518, 523. All of the issues alleged in Tautges' Complaint relate to her employment as a firefighter in which she is speaking with a manager or supervisor. All of the issues relate to her daily professional activities as a firefighter or issues related to how the former and current Fire Chief were managing or supervising the department. Thus, because all of the allegations relate to Fire Department matters that are part of Tautges' job duties to discuss with a supervisor, her claim is not a matter of public concern under *Garcetti*. *See Nesvold v. Roland*, 37 F. Supp.3d 1027, 1038 (W.D. Wis. 2014).

### 2. Tautges' speech was about internal GPD affairs.

The context of the conversations alleged by Tautges addressed concerns about the internal affairs of the GFD and the conversations were with either the Village Fire Chief or Village Manager. These individuals were supervisors over Tautges and the Fire Department. It was thus appropriate for Tautges to report her concerns about Fire Department business to them as part of her official job duties. *See Swetlik v. Crawford*, 738 F.3d 818, 826 (statements made by officer to fellow officers and deputy chief that police chief directed him to act contrary to department policy were made as part of his official duties); *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511 (7th Cir. 2007) (officer's report to supervisors was part of his job duties and thus not speech as a private citizen). Moreover, Tautges alleges that she spoke with these Village supervisors, rather than to any outside investigative authority. *See Nesvold*, 37 F. Supp. 3d at 1038 (speech "directed to

individuals internal to a public employee's job" generally not protected). Finally, there is no allegation that Tautges was doing anything other than speaking with her bosses about conditions of her employment and ongoing issues within the Fire Department. *See* (Dkt. 1, ¶¶ 63-64, 84) Without more, Tautges' allegations are insufficient to establish that she engaged in protected speech.

### B. Tautges Suffered No Sufficient Deprivation.

Assuming, arguendo, that Tautges had engaged in protected speech, her retaliation claim would still fail for lack of sufficient deprivation. The action relied upon in a First Amendment retaliation claim must be a deprivation that is sufficiently adverse to deter an employee of "ordinary firmness" from exercising the right of free speech. *Power v. Summers*, 226 F.3d 815, 820-21 (7th Cir. 2000). A plaintiff must show that defendant "took some action with materially adverse consequences... in the sense that the employee is made worse off by it" with the potential for chilling speech. *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995).

Tautges contends Defendants retaliated against her for reporting discrimination to the Village of Greendale City Administrator and the EEOC. *See* (Dkt. 1, ¶ 17) Tautges alleges her EEOC Charge of Discrimination was first submitted to GFD and Saidler on March 11, 2019 (Dkt. 1, ¶ 68) and her meeting with the City Administrator occurred on April 30, 2019 (Dkt. 1, ¶ 63). The Complaint fails to allege specifically how each Defendant retaliated against her after March 11, 2019.

The only subsequent allegations involving Saidler involve him summarily dismissing her EEOC Complaint and failing to investigate or remedy her Complaint. (Dkt. 1, ¶¶, 70, 72) Saidler retired in January of 2020. (Dkt. 1, ¶ 74) The only allegations involving Defendant Kais are that he accused Tautges of insubordination in an email to the City Administrator. (Dkt. 1, ¶ 80) These

19

allegations are not sufficiently adverse to chill speech by a person of ordinary firmness. As such, the conduct of Saidler and Kais is not sufficiently adverse to form the basis of a retaliation claim.

Tautges' First Amendment retaliation claim must be dismissed as a matter of law.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that all claims alleged against them be dismissed with prejudice.

Dated at Milwaukee, Wisconsin this 5th day of August, 2022.

WIRTH + BAYNARD
Attorneys for Defendants

By: */s/ Kyle R. Moore*
Kyle R. Moore, WI State Bar No. 1101745
788 North Jefferson Street, Suite 500
Milwaukee, WI 53202-4620
T: (414) 225-4060 / F: (414) 271-6196
E-mail: krm@wbattys.com
